**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DOROTHY KALKSMA and BARBARA BEUCLER,<br><br>      Plaintiffs,<br><br>v.<br><br>KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC.,<br><br>      Defendant. | Civ. No. 10-2829 (DRD)<br><br><br>**O P I N I O N** |

*Appearances by:*

SCHIFFMAN, ABRAHAM, KAUFMAN & RITTER, P.C.
by: Evan L. Goldman, Esq.
Three University Plaza
Hackensack, New Jersey 07601

 *Attorneys for Plaintiffs*

GIBBONS P.C.
by: Richard S. Zackin, Esq.
One Gateway Center
Newark, New Jersey 07102-5310

 *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

This case concerns employee misclassification and ERISA. Defendant Konica Minolta Business Solutions U.S.A., Inc. ("KMBS") is an information technology company that provides imaging and printing services to businesses. Plaintiffs Kalksma and Beucler are employees of KMBS who claim that they were improperly excluded from participation in KMBS benefit plans due to their misclassification as independent contractors. Plaintiffs allege that they were denied the benefits owed to them as employees and were wrongfully retaliated against when they attempted to correct their misclassification. Plaintiffs sue under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and New Jersey common law seeking damages for lost benefits and retaliation. Defendant claims that Plaintiffs were not entitled to benefits for the period in which they were engaged as independent contractors and that Plaintiffs were not retaliated against.

Defendant now moves for summary judgment on all counts. For the reasons set forth below, Defendant's motion is GRANTED. Plaintiffs' complaint is DISMISSED.

## I. BACKGROUND

Headquartered in Ramsey, New Jersey, Defendant KMBS provides a variety of printing and imaging services to its business clients, including office printer systems, bulk production printers, printing and imaging software applications, and information technology strategy and consulting. Like many companies, it engages in substantial marketing efforts to attract and retain business clients.

Plaintiffs Kalksma and Beucler have been involved in marketing for KMBS for many years. (Pl. SOF ¶¶ 1,7). Both originally applied for positions as full time employees, but were told that they were ineligible because they insisted on working part time hours. (Zackin Ex. A at

10-13) (Zackin Ex. B. at 7-9). To accommodate this request, KMBS hired each as an independent contractor or consultant, and instructed each Plaintiff to invoice KMBS for her hours actually worked. (Zackin Ex. A at 22) (Zackin Ex. B. at 9-10).

Between 1999 and 2009 Kalksma worked within KMBS's Marketing Communications Department. (Def. SOF ¶ 1). In that capacity, Kalksma appears to have had a variety of responsibilities related to the production of marketing materials. (Pl. SOF ¶ 12). While serving as an independent contractor, Kalksma submitted invoices for her time and was paid an hourly wage with no associated benefits or payroll tax withholding. (Def. SOF ¶ 3). Similarly, Beucler served in the Marketing Communications Department between 2003 and 2009. Id. at 2. While there, Beucler was responsible for creating sales materials for use in the US market. (Pl. SOF ¶ 3). She was also paid an hourly wage with no associated benefits or payroll tax withholding. (Def. SOF ¶ 3).

Both Beucler and Kalksma were dissatisfied with this arrangement and claim to have periodically inquired about becoming formal employees. (Pl. SOF ¶ 12). After being repeatedly rebuffed, in November of 2008, Beucler filed a Form SS-8 with the Internal Revenue Service, requesting that the IRS determine the federal employment tax status of her services to KMBS. Id. ¶ 19. On June 3, 2009, the IRS released a compliance opinion in which it determined that because of the nature of Beucler's responsibilities, KMBS could not treat her as an independent contractor for tax purposes and owed employment tax on her wages. (Warwick Ex. 1). Consequently, KMBS was directed to pay past due employment taxes to the IRS. (Goldman Ex. D, 12:7-16).

After receiving the IRS determination, KMBS conducted an internal investigation and identified four other individuals whose classification as independent contractors could run afoul

3

of the ruling. Id. at 7:16-8:8. One of the other individuals was Plaintiff Kalksma. After reviewing the compliance opinion, KMBS offered Kalksma and Beucler positions as ordinary employees. (Warwick Cert. ¶ 6). Kalksma and Beucler accepted the offer and the parties negotiated new employment terms, including job title, salary, benefits, and hours. Id. At these negotiations, Plaintiffs were represented by counsel. Id. After agreeing to the new terms of employment, Plaintiffs were placed in the KMBS payroll as employees effective December 14, 2009. Id.

Since they were hired as employees, Plaintiffs claim to have experienced "retaliation" because of the change in their status. Most substantially, the hourly rates negotiated by Plaintiffs as employees were 30% lower than the hourly rates that they were paid as independent contractors. (Pl. SOF ¶ 45). Plaintiffs also complain that their formal job titles within the company computer system have changed since rehiring, though they have been directed to refer to themselves, both internally and to outsiders, by the same title. Id. ¶¶ 33-39. Plaintiffs finally complain that as employees they are frequently called upon to assist coworkers and work overtime. Id. ¶¶ 42-43.

On June 2, 2010, Plaintiffs filed suit against KMBS, seeking damages for unpaid benefits and retaliation under ERISA. (Doc. No. 1). Plaintiffs claim that they were entitled to full benefits as employees during the time period in which they worked as independent contractors. Plaintiffs further claim that are entitled to retain the same hourly rates, job titles, and responsibilities that they enjoyed as independent contractors despite renegotiating the terms of their employment in 2009.

There are two benefit plans at issue. The first is the KMBS 401(k) Savings and Retirement Plan. ("401k Plan") (Warwick Ex. 2). The 401k Plan defines an "Employee" for eligibility purposes as follows:

> An "Employee" means any person who is classified by an Employer, in accordance with its payroll records, as an employee of the Employer, other than any such person who is either (i) covered by a collective bargaining agreement that does not specifically provide for coverage under the Plan, (ii) a nonresident alien who does not receive United States source income or (iii) covered by any other qualified pension plan sponsored by the Konica Minolta controlled group. Any individual who is not treated by an Employer as a common law employee of the Employer shall be excluded from Plan participation even if a court or administrative agency determines that such individual is a common law employee and not an independent contractor.
>
> Id. at Art. 1.

The second plan is the KMBS Cafeteria Plan ("Cafeteria Plan") (Warwick Ex. 3). The Cafeteria Plan defines an "Employee" for eligibility purposes as follows:

> Employee means a person who is a common law employee of the Employer, provided, however, that an Employee does not include any person who is (A) a person who is classified by the Employer as working on discrete projects; (B) a person who is classified by the Employer as an independent contractor as evidenced by its action in not withholding taxes from his or her compensation, regardless of whether the person is the Employer's common law employee…
>
> Id. at Art. 2.9.

Like many ERISA plans, the KMBS benefits plans provide significant discretion to the Plan Administrator to make eligibility determinations. The 401k Plan states that "the plan administrator ... shall have all such powers and authorities as may be necessary to carry out the provisions of the Plan, including the power and authority to interpret and construe the provisions of the Plan, to make benefit determinations, and to resolve any disputes which arise under the Plan." (Warwick Ex. 2 at Art. 18.1). Similarly, the Cafeteria Plan permits the Plan Administrator to "determine all questions concerning the eligibility of any individual to participate in, be covered by, and receive benefits under the Plan pursuant to the provisions of the Plan." (Warwick Ex. 3 at Art. 7.3). The Plan Administrator for each plan is Donald Warwick, a Vice President of Human Resources at KMBS. (Warwick Cert. ¶¶ 1,7). Warwick has submitted

a sworn certification in which he states that he reviewed Plaintiffs' claims and determined that they were not eligible for benefits under either the 401k Plan or the Cafeteria Plan. Id. ¶ 7.

On the basis of these facts, Defendant now moves for summary judgment.

## II.     DISCUSSION

**A.     Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Rule 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

In a motion for summary judgment, the moving party has the burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine issue of fact exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a genuine issue of material fact and do not merely suggest "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

A party must support its assertions that a fact cannot be or is genuinely disputed "by (A) citing to particular parts of materials in the record…or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c)(1). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may…(2) consider the fact undisputed for purposes of the motion…" Rule 56(e).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and determine the truth of the matter, but, rather, to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate.

The meaning of a contract may be decided by summary judgment where "the contract language is unambiguous and the moving party is entitled to judgment as a matter of law." Arnold M. Diamond, Inc. v. Gulf Coast Trailing Co., 180 F.3d 518, 522 (3d Cir. 1999). However, to grant summary judgment, the court must "conclude that the contractual language is subject to only one reasonable interpretation." Id.; see also Tamarind Resort Associates v. Government of Virgin Islands, 138 F.3d 107, 111 (3d Cir. 1998) ("a contract is unambiguous if it is reasonably capable of only one construction").

Many of the issues facing the Court here involve the interpretation of an unambiguous contract. Consequently summary judgment is appropriate. The Court will examine each of the contentions raised by Plaintiffs in turn.

7

**B.      Were Plaintiffs Intentionally Misclassified?**

Plaintiffs claim that Defendants intentionally misclassified them as independent contractors in order to deny them benefits due under ERISA. (Pl. Br. 4). Plaintiffs do not argue that the language of the 401k Plan or Cafeteria Plan supports Plaintiff's eligibility. Rather, Plaintiffs urge the court to ignore the "terms within these plans" and focus instead on the "underlying intent for misclassification, and the damages resulting from same." Id. Plaintiffs offer no support for this free form mode of analysis. Consequently, the Court will evaluate Plaintiffs' claims in accordance with the language of the relevant benefits plans and controlling ERISA caselaw.

As a threshold matter, the Court is obligated to apply a deferential standard of review to determinations made by an ERISA Plan Administrator acting within its explicit discretion. In Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989) the Supreme Court set forth a rubric controlling judicial review of ERISA benefit eligibility decisions. Under Firestone, courts are to be "guided by principles of trust law" in evaluating the conclusions of Plan Administrators. Firestone, 498 U.S. at 111. These "principles of trust law require courts to review a denial of plan benefits 'under a de novo standard' unless the plan provides to the contrary. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 111 (2008) quoting Firestone, 498 U.S. at 115.

However "[w]here the plan provides to the contrary by granting the administrator or fiduciary discretionary authority to determine eligibility for benefits, trust principles make a deferential standard of review appropriate…." Metropolitan Life, 554 U.S. at 111 (internal citations omitted).[1] Specifically, "[i]f the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations, we review its decisions under an abuse-of-discretion

---

[1]     See also Firestone, 489 U.S. at 111-112 ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers.").

8

(or arbitrary and capricious) standard." Viera v. Life Ins. Co. of North America, 642 F.3d 407, 413 (3d Cir. 2011). An administrator's decision is only arbitrary and capricious "if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Miller v. American Airlines, Inc., 632 F.3d 837, 845 (3d Cir. 2011) (internal citation omitted).[2]

Here each benefits plan specifically provides that the Plan Administrator shall have broad discretion to make eligibility determinations. While "[t]here are no 'magic words' determining the scope of judicial review of decisions to deny benefits", the explicit language vesting the Plan Administrator with discretionary responsibility over benefits determination obligates the Court to treat such a determination with deference. Viera, 642 F.3d at 413.

Plaintiffs have introduced no evidence that the eligibility determinations made by the Plan Administrator were "arbitrary and capricious." Indeed, Defendant notes that all individuals hired as independent contractors were treated in a like manner. (Warwick Cert. ¶ 7). Defendant has also introduced sworn statements from the Plan Administrator in which he describes why, in the exercise of his discretion, he determined that Plaintiffs and other similarly situated individuals were ineligible for benefits. Id. While Plaintiffs may not agree with the Plan Administrator's conclusions, they have advanced no argument that his reasoning is unsupportable based on the language of the relevant agreements.

---

[2] In conducting its deferential review, the Court is also required to consider the conflict of interest that a Plan Administrator who is also an employee of the funding company may have. Metropolitan Life, 554 U.S. at 108. How exactly this differs from a true abuse of discretion review or a de novo review is somewhat uncertain. Id. at 119-120 ("The majority would accord weight, of varying and indeterminate amount, to the existence of such a conflict in every case where it is present.") (Roberts, C.J., dissenting). However in this case the clear language of the plan documents and absence of any evidence of an improper motive for denial makes the ambiguous review standard less significant. Under a deferential standard, a de novo standard, or anything in between, Plaintiffs' claims fail.

Indeed, even if the Court were to subject the 401k Plan and Cafeteria Plan under a more rigorous de novo review, Plaintiffs' claims would still fail. The plain text of each plan states that KMBS's classification of Plaintiffs as independent contractors rather than employees renders them ineligible for benefits even if that classification is subsequently found to be legally erroneous.[3] The current situation—where independent contractors are later held to be common law employees—was clearly contemplated and provided for when each plan was drafted. Plaintiffs' "misclassification" argument fails because each plan specifically excludes misclassified employees from benefits.[4]

Plaintiff contends that their eligibility for benefits cannot determined by the "labels" used by their employment contracts, and quotes Sharkey v. Ultramar Energy Ltd.[5] in support. However the benefits plan at issue in Sharkey applied to all employees. As a consequence, the court in Sharkey was only required to determine whether the Sharkey plaintiff was a common law employee, not whether he fell into a specific category of employees covered by the benefit

---

[3] Warwick Ex. 2 at Art. 1 ("Any individual who is not treated by an Employer as a common law employee of the Employer shall be excluded from Plan participation even if a court or administrative agency determines that such individual is a common law employee and not an independent contractor."); Warwick Ex. 3 at Art. 2.9 ("Employee does not include any person who is … classified by the Employer as an independent contractor as evidenced by its action in not withholding taxes from his or her compensation, regardless of whether the person is the Employer's common law employee").

[4] Nor is it surprising that a benefits plan would be written in this fashion. The record demonstrates that Plaintiffs were paid a higher wage as independent contractors because they were not provided benefits. When a company offers outside consultants higher wages to compensate them for diminished benefits, it would be foolish not to attempt to protect itself from being forced later to pay both the higher wages and the benefits if it receives an adverse judicial ruling.

[5] 70 F. 3d 226 (2d Cir. 1995).

plan.[6] The Sharkey decision does not hold that a court should ignore plan language restricting eligibility to specific categories of employees. Indeed, ERISA does not require employers to offer all benefits plans to all employees or even to offer benefits plans at all. Bellas v. CBS, Inc., 221 F.3d 517, 522 (3d Cir. 2000) ("ERISA neither mandates the creation of pension plans nor in general dictates the benefits a plan must afford once created.").[7] Under ERISA, employers have the freedom to craft benefits plans that exclude specific categories of employees and to have those decisions respected. Dade v. North American Philips Corp., 68 F.3d 1558, 1562 (3d Cir. 1995) ("we are required to enforce the Plan as written unless we can find a provision of ERISA that contains a contrary directive."). What employers may not do is alter the definition of "employee" for the purposes of the ERISA statute or otherwise limit the application of the statute to employee benefit plans that they do choose to provide. But KMBS does not argue that Plaintiffs do not meet the definition of "employees" under ERISA or the tax code. KMBS merely argues that the language of the plans specifically exclude them. And it is correct.

Plaintiffs also urge reliance upon Vizcaino v. Microsoft Corp., 97 F.3d 1187 (9th Cir. 1996), vacated en banc 120 F. 3d 1006. In Vizcaino, the Court of Appeals for the 9th Circuit held that freelancers who had been misclassified by Microsoft as independent contractors were entitled to benefits under a series of ERISA plans offered by the company. While the facts of Vizcaino are superficially similar, its holding cannot control here.

---

[6] Note that the district court in Sharkey had dismissed the case in a two page summary order with little justification. In reversing and remanding the decision, the Court of Appeals for the Second Circuit merely directed the district court to more fully explicate its reasoning for finding that benefits were not due. It specifically rejected the Sharkey plaintiff's argument that he was entitled to summary judgment in his favor. 70 F. 3d at 232.

[7] See also Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995) ("ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.").

11

First, the Vizcaino court premised its decision on ambiguity in the plan agreements at issue in that case. Vizcaino, 97 F.3d at 1194 ("the terms of the SPP are susceptible to two reasonable interpretations and therefore are ambiguous"). Indeed, the court in Vizcaino found that the relevant eligibility language in one of the plans was so ambiguous that it could not be resolved even through recourse to extrinsic evidence. Id. at 1195-1196 ("the extrinsic evidence on which Microsoft relies does not resolve the ambiguity in its favor."). Finding no other means by which it could resolve the dispute, the Court relied upon the doctrine of *contra proferentem*, and construed the contract against the drafter—in that case, Microsoft. Id. at 1196. But in this case there is no ambiguity in the plan agreements. The 401k Plan and Cafeteria Plan explicitly state that individuals who are treated as independent contractors and do not have wages withheld by KMBS are not eligible for benefits, even if the decision not to withhold wages is later found to be improper. (Warwick Ex. 2 at Art. 1) (Warwick Ex. 3 at Art. 2.9). Absent any ambiguity, there is no need to resort to extrinsic evidence or the *contra proferentem* doctrine.[8]

Moreover, the Vizcaino decision does not bind this Court. As a matter of law, this Court is obligated to follow the decisions and legal reasoning of the Court of Appeals for the Third Circuit.[9] But even ignoring geography, the Vizcaino decision upon which Plaintiffs rely was subsequently vacated by an en banc decision of the Court of Appeals for the Ninth Circuit. 120 F. 3d 1006. In vacating the decision, the court distinguished between the two plans at issue in the

---

[8] Even if the Court were to resort to extrinsic evidence, it would not change the result. Plaintiffs do not claim that they expected to receive benefits when they were hired. (Goldman Ex. A at 22) (Goldman Ex. B. at 9-10). Under New Jersey law, a court may not "fashion a better contract for the parties than they themselves made…." Loigman v. Township Committee of the Tp. of Middletown, 297 N.J. Super. 287, 301 (App. Div. 1997).

[9] See, e.g., Magnin v. Beeler, 110 F.Supp.2d 338, 344 (D.N.J. 2000) ("This Court is bound to follow not only the holding but also the reasoning set forth by the Third Circuit.").

case. It held that the determination of eligibility for one of the plans should have been properly left to the Plan Administrator, and not to the court. Id. at 1013 ("we have determined that we should not allow ourselves to be seduced into making a decision which belongs to the plan administrator in the first instance."). In the other, the court found that the Plaintiffs had not made the necessary contributions to receive benefits. Id. at 1015. The court fully recognized that in the absence of evidence of a clear abuse of discretion, decisions about eligibility were properly made by the plan administrator and not the courts. Id. at 1009 ("when reviewing the decision of a plan administrator who has discretion, the exercise of that discretion is reviewed under the arbitrary or capricious standard, or for abuse of discretion, which comes to the same thing.").

Other courts in this district have come to similar conclusions regarding the treatment of employees classified as independent contractors.[10] In Sturgis v. Mattel, Inc., 525 F.Supp.2d 695 (D.N.J. 2007), a worker who had signed an independent contractor agreement brought suit against Mattel seeking benefits under various ERISA plans. The court upheld the determinations of the plan administrators, finding that even if the plaintiff were a common law employee, she would still have been excluded from eligibility by the language of the benefits agreements. Sturgis, 525 F.Supp.2d at 706-707 ("Plaintiff's entitlement to benefits turns not only on whether she meets the statutory definition of "employee," but also whether she meets the plans' definitions for eligible participants. It was not arbitrary or capricious for Mattel, in making its

---

[10] Nor is this reasoning limited to the District of New Jersey. For example, in Gustafson v. Bell Atlantic Corp., 171 F.Supp.2d 311, 321 (S.D.N.Y. 2001), the court held that a group of plaintiffs were not eligible for ERISA benefits even though they were entitled to damages as employees under the Fair Labor Standards Act.

benefits determination, to find that Plaintiff, whom Mattel concededly had always classified as an independent contractor, was not eligible for benefits.") (internal citations omitted).[11]

Last, the Court notes that Plaintiffs have introduced no evidence of intentional misclassification. While Plaintiffs' brief is peppered with accusatory language stating that their classification as independent contractors was some sort of "intentional"[12] scheme by which Plaintiffs were "cloaked… in the label of independent contractors"[13] to "interfere with [Plaintiffs'] attainment of … rights"[14] for Defendant's "own self serving reasons"[15] they introduce zero evidence of actual fraud or malfeasance. While Defendant's intent is essentially irrelevant to Plaintiffs' eligibility for benefits under an employee compensation plan, it is surprising that Plaintiffs offer so little evidence of KMBS's subjective motivations when so much of their argumentation appears predicated upon it.

What testimony Plaintiffs have introduced suggests that KMBS hired Plaintiffs as independent contractors because it believed that the nature of Plaintiffs' responsibilities and part-

---

[11] Plaintiffs claim that Sturgis is inapplicable because the IRS has ruled that they were common law employees and KMBS has acknowledged this status by offering them full time employment. (Pl. Br. 6). But this argument carries no weight. First, these facts do not actually distinguish the case—the court in Sturgis noted that Mattel had all but acknowledged that the Sturgis plaintiff was a common law employee. Sturgis, 525 F.Supp.2d at 705. Second, it is hard to see how a subsequent offer of employment by KMBS has any bearing on the existence of pre-existing ERISA liability. It would be a perverse result that punished KMBS for offering Plaintiffs a normal job by holding that the job offer constituted an admission of ERISA liability. Last, Plaintiffs do not address the actual holding of Sturgis, that an ERISA plaintiff must show both that he or she was a common law employee and that he or she was eligible under the language of the relevant benefit plans. Like the Sturgis plaintiff, Plaintiffs here focus only on the first element and ignore the second.

[12] Pl. Br. 1, 4, 5.

[13] Pl. Br. 8.

[14] Pl. Br. 4.

[15] Pl. Br. 9.

time status made such a classification appropriate. When it turned out that this status did not comply with tax laws, KMBS remedied it by offering Plaintiffs jobs. To the extent that KMBS failed to pay the necessary federal taxes, it has already been punished. Nothing before the Court suggests some nefarious plot to cheat Plaintiffs out of their due. Nor were Plaintiffs mislead concerning the terms of the employment bargain they struck. Plaintiffs offer no reason why they should be permitted to renegotiate the terms of their new employment or collect an economic windfall.

Plaintiffs have failed to demonstrate that they are eligible for benefits under the language of the 401k Plan or Cafeteria Plan. Even if the Court were to assume that Plaintiffs were common law employees, this is not sufficient to sustain their cause of action for unpaid benefits. As such, Plaintiffs' ERISA claims will be DISMISSED.

C.       **Are Plaintiffs Entitled to Damages for Retaliation?**

Plaintiffs also seek damages for retaliation, claiming that they have been discriminated against for attempting to collect on ERISA benefits to which they were lawfully entitled. Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan…."29 U.S.C.A. § 1140. To recover under § 510, a plaintiff must show that: "1) she is a member of an ERISA plan, 2) she was qualified for the position, and 3) she was [retaliated against] under circumstances that provide some basis for believing that [her employer] intended to deprive her of benefits." Kampmier v. Emeritus Corp.,472 F.3d 930, 943 (7th Cir. 2007).

As stated above, Plaintiffs were not eligible for benefits under any ERISA plan. As such, their claim for retaliation must fail, whether brought under Section 510 or New Jersey common law.[16] Plaintiffs' retaliation claims are DISMISSED.

### III.    CONCLUSION

For the foregoing reasons, Defendant's motion is GRANTED. Plaintiffs' complaint is DISMISSED.

s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: August 22, 2011

---

[16]    Defendants claim that there is no cause of action for retaliation under New Jersey common law. (Def. Br. 13). In response, Plaintiffs can point to no authority suggesting that this cause of action exists, and cite instead a case brought under Illinois law before the Court of Appeals for the Seventh Circuit. (Pl. Br. 13). In any event, because Plaintiffs were not entitled to benefits under any KMBS Plans, this Court need not opine on the existence of a cause of action for retaliation under New Jersey law.